**[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 105.]**

THE STATE OF OHIO, APPELLANT, *v*. MESA, APPELLEE.

**[Cite as *State v. Mesa*, 1999-Ohio-253.]**

*Criminal law—Searches and seizures—Inventory search of compartment of lawfully impounded vehicle does not contravene Fourth Amendment to United States Constitution or Section 14, Article I of the Ohio Constitution, when.*

An inventory search of a compartment of a lawfully impounded vehicle does not contravene the Fourth Amendment to the United States Constitution or Section 14, Article I of the Ohio Constitution where the search is administered in good faith and in accordance with reasonable police procedure(s) or established routine. (*State v. Hathman* [1992], 65 Ohio St.3d 403, 604 N.E.2d 743, applied and followed.)

(No. 98-1529—Submitted May 25, 1999—Decided October 20, 1999.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 72699.

————————————

{¶ 1} On December 27, 1996, a warrant, originating in the Lakewood Municipal Court, was issued for the arrest of appellee, Jose Mesa. Later, on that same day, appellee was arrested by officers from the Lakewood Police Department. Appellee, at the time of his arrest, was in his car in a parking lot in the "Flats" area of Cleveland, Ohio. Before appellee's vehicle was towed, arresting officers commenced an inventory search of the contents of the automobile.

{¶ 2} During the inventory search, one of the officers opened the armrest console located next to the driver's seat. The console was closed but not locked. A loaded nine-millimeter handgun was discovered inside the console. Subsequently, all items taken from the automobile were listed on reports filed with

the police department.

{¶ 3} The Lakewood Police Department had a written inventory policy, that set forth that "open compartments of the vehicle are to be searched," and that "[l]ocked compartments shall not be opened by the officer during a standard inventory." Section 9.1.1., Towing-General Information/Procedures. The policy also stated that custody be taken of contraband and property worth $25 or more and that a report "be generated listing any and all property removed from the vehicle." Sections 9.1.1.2. and 9.1.1.3.

{¶ 4} In January 1997, the Cuyahoga County Grand Jury indicted appellee, charging him with rape (count 1), felonious assault (count 2), gross sexual imposition (counts 3 and 4), theft (count 5), and carrying a concealed weapon (count 6). Subsequently, on February 27, 1997, appellee filed two motions with the trial court. In one motion, appellee moved to have the concealed weapon charge tried separately from the other charges. In the other motion, appellee moved to suppress the admission of the handgun as evidence. A hearing on the motions was conducted in March 1997.

{¶ 5} Following the hearing, the trial court, in an entry filed March 31, 1997, granted appellee's motion to separate, for trial, the concealed weapon charge from the other counts of the indictment. With respect to the concealed weapon charge, the court also held that it would not rule on appellee's motion to suppress evidence of the handgun until after appellee's trial on the other charges (counts 1 through 5). The trial court further held that the arrest warrant was issued lawfully, that it was properly executed by the police, and that the police had reasonable cause to arrest appellee without a warrant.

{¶ 6} Thereafter, appellee was tried before a jury. A judgment of acquittal was entered in favor of appellee as to count 2 of the indictment, and the jury found appellee not guilty of the other charges (counts 1, 3, 4, and 5).

{¶ 7} On April 10, 1997, a hearing was conducted regarding the concealed

2

weapon charge. At the close of the hearing, the trial court granted appellee's motion to suppress evidence as to the loaded handgun. On June 11, 1997, the trial court issued its written opinion, holding that under *State v. Hathman* (1992), 65 Ohio St.3d 403, 604 N.E.2d 743, the "suppression of the weapon is mandated." Specifically, the court held that the "search and seizure was defective because of the absence of a policy dealing with unlocked but closed containers, as well as the clear violation by the police department of its own written audit/inventory procedures; and, finally, the lack of an articulated policy regulating the opening of such containers."

{¶ 8} On June 17, 1997, appellant, state of Ohio, appealed the trial court's suppression ruling to the Court of Appeals for Cuyahoga County and certified, pursuant to Crim.R. 12(J), that (1) the appeal was not taken for purposes of delay, and (2) the granting of the motion to suppress rendered the state's proof so weak that any reasonable possibility of effective prosecution had been destroyed. The court of appeals, in a split decision, affirmed the judgment of the trial court, holding that there was no clear distinction in the law between inventory searches pertaining to containers and compartments in an automobile,[1] and that the Lakewood police policy governing such searches was ambiguous. In this regard, the court held that "[a]s the Lakewood policy does not set forth a specific procedure for conducting an inventory search, the implementation of this policy by the Lakewood police cannot result in a standardized procedure for inventory searches as required by *Hathman*, *supra*, and thus cannot be found to produce an inventory search deemed reasonable under the Fourth Amendment to the Constitution of the United States."

{¶ 9} This cause is now before this court pursuant to the allowance of a

---

1. For this proposition the court of appeals cited *United States v. Ross* (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572. *Ross*, however, did not involve an inventory search like we have in the case at bar. The search in *Ross* was a "probable cause" search. See *Colorado v. Bertine* (1987), 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739, 745.

discretionary appeal.

—————————

*William D. Mason*, Cuyahoga County Prosecuting Attorney, *George J. Sadd*, *L. Christopher Frey* and *Perry M. Kendall*, *Jr.*, Assistant Prosecuting Attorneys, for appellant.

*Messerman & Messerman Co.*, *L.P.A.*, *Gerald A. Messerman*, *Gale S. Messerman* and *Michael R. Hamed*, for appellee.

—————————

**DOUGLAS, J.**

{¶ 10} The central issue in this case is whether Lakewood police officers violated the Fourth Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, and/or Section 14, Article I of the Ohio Constitution, when they conducted an inventory search of appellee's lawfully impounded vehicle. For the reasons that follow, we find that the officers, in opening the unlocked armrest console of the automobile and finding the loaded handgun, did not violate the Fourth Amendment or Section 14, Article I. Accordingly, we reverse the judgment of the court of appeals.

I

{¶ 11} As a preliminary matter, we first consider appellee's contentions set forth in his second proposition of law, challenging the validity of the arrest warrant issued by Judge Patrick J. Carroll of the Lakewood Municipal Court. Specifically, appellee claims that because the underlying criminal complaint against him simply "traces the skeletal language of the statute," it failed "to state sufficient facts to establish probable cause, or to permit an independent judicial determination of probable cause." Therefore, according to appellee, the arrest was unlawful and the subsequent inventory search of his automobile was invalid. Appellee also claims that, during the March 18, 1997 suppression hearing, the prosecuting attorney who

signed the criminal complaint was permitted, in violation of Crim.R. 4(A)(1),[2] to testify with respect to unrecorded statements provided by the prosecutor to Judge Carroll.

{¶ 12} The trial court held that the arrest warrant issued by Judge Carroll was lawful in all respects. On appeal by the state, appellee, with respect to this ruling, did not file a cross-appeal. In this regard, appellant claims that the contentions set forth in appellee's second proposition of law have not been properly preserved for review and thus are waived pursuant to App.R. 3(C)(1). However, assuming for purposes of argument that appellee's contentions are properly before us, we find that they are without merit because we agree with the trial court's holding that at the time of appellee's arrest the Lakewood Police had sufficient cause to arrest him even without a warrant. R.C. 2935.03(B)(1) provides that "[w]hen there is reasonable ground to believe that an offense of violence * * * has been committed within the limits of the political subdivision * * * in which the peace officer is * * * employed * * * a peace officer * * * may arrest and detain * * * any person whom the peace officer has reasonable cause to believe is guilty of the violation." It is clear that the information derived from the investigation by the Lakewood Police Department prior to appellee's arrest provided the police with reasonable cause to arrest him. Therefore, appellee's arguments that the evidence of the loaded handgun should be suppressed because

---

2. Crim.R. 4(A)(1) provides: "If it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed, and that the defendant has committed it, a warrant for the arrest of the defendant, or a summons in lieu of a warrant, shall be issued by a judge, magistrate, clerk of court, or officer of the court designated by the judge, to any law enforcement officer authorized by law to execute or serve it.

"The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished. Before ruling on a request for a warrant, the issuing authority may require the complainant to appear personally and may examine under oath the complainant and any witnesses. The testimony shall be admissible at a hearing on a motion to suppress, if it was taken down by a court reporter or recording equipment."

of a faulty arrest warrant, and that a violation of Crim.R. 4(A)(1) has occurred, are not well taken.

II

**{¶ 13}** Having determined that appellee was lawfully arrested, we now turn our attention to whether the search of appellee's vehicle violated the Fourth Amendment and/or Section 14, Article I prohibitions against unreasonable searches and seizures. Appellant contends that the inventory search of appellee's vehicle complied with the constitutional requirements set forth in *State v. Hathman* (1992), 65 Ohio St.3d 403, 604 N.E.2d 743. To that end, appellant posits that the search was conducted in good faith, that it was not for the sole purpose of investigation, and that it was in accordance with reasonable standardized police procedures. Therefore, according to appellant, the inventory search of appellee's vehicle was lawful in all respects. We agree.

**{¶ 14}** Inventory searches are a "well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine* (1987), 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739, 745. See, also, *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000. Inventory searches involve administrative procedures conducted by law enforcement officials and are intended to (1) protect an individual's property while it is in police custody, (2) protect police against claims of lost, stolen or vandalized property, and (3) protect police from dangerous instrumentalities. *Opperman*, 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005. Because inventory searches are administrative caretaking functions unrelated to criminal investigations, the policies underlying the Fourth Amendment warrant requirement, including the standard of probable cause, are not implicated. *Id.* at 370, 96 S.Ct. at 3097, 49 L.Ed.2d at 1006, fn. 5. See, also, *Bertine*, 479 U.S. at 371, 107 S.Ct. at 741, 93 L.Ed.2d at 745. Rather, the validity of an inventory search of a lawfully impounded vehicle is judged by the Fourth Amendment's standard of reasonableness. See *Opperman* and *Bertine*,

*supra*.

{¶ 15} In *Hathman*, paragraphs one and two of the syllabus, we analyzed and followed various United States Supreme Court decisions regarding inventory searches of lawfully impounded vehicles and held:

"1. To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine. (*South Dakota v. Opperman* [1976], 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Colorado v. Bertine* [1987], 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739; and *Florida v. Wells* [1990], 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1, followed.)

"2. If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers. (*Colorado v. Bertine* [1987], 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739; and *Florida v. Wells* [1990], 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1, followed.)"

{¶ 16} In *Hathman*, the Ohio State Highway Patrol arrested Hathman and conducted an inventory search of his vehicle. During the inventory search, an officer opened and searched the vehicle's trunk and discovered a plastic bag. The bag contained several smaller bags and a pill bottle. These containers were then opened and found to contain contraband. Under these facts, we found that the search of the trunk itself was reasonable because the trunk is part of an automobile that is normally included in the scope of an inventory search, and that testimony established that it was standard procedure to search such areas. However, we ultimately held that the evidence discovered in the containers should be suppressed because, in accordance with *Bertine* and *Wells*, *supra*, "the existence of a reasonable policy or procedure governing inventory searches in general is

insufficient to justify the opening of closed containers encountered during the inventory search. Rather, some articulated policy must also exist which regulates the opening of containers found during the authorized inventory search." *Id*., 65 Ohio St.3d at 408, 604 N.E.2d at 746.

{¶ 17} In the case at bar, we are not confronted with the search of a "closed container." Instead, we are confronted with the examination of an unlocked but closed compartment of an automobile, *i.e*., the armrest console. Indeed, like glove compartments, consoles are "a place for the temporary storage of valuables," *Opperman*, 428 U.S. at 372, 96 S.Ct. at 3098, 49 L.Ed.2d at 1007, and they are areas of a vehicle that are normally part of a standard inventory search, *Hathman*, 65 Ohio St.3d at 408, 604 N.E.2d at 746 (areas of an automobile that are normally part of an inventory search are the "interior, trunk, glove box, etc."). See, also, *State v. Robinson* (1979), 58 Ohio St.2d 478, 12 O.O.3d 394, 391 N.E.2d 317 (search of trunk of a lawfully impounded vehicle pursuant to standard department procedure is reasonable and satisfies the requirements of the Fourth Amendment). Accordingly, we find that an inventory search of a compartment of a lawfully impounded vehicle does not contravene the Fourth Amendment to the United States Constitution or Section 14, Article I of the Ohio Constitution where the search is administered in good faith and in accordance with reasonable police procedure(s) or established routine.

{¶ 18} We recognize that the court of appeals majority held that the inventory search of appellee's vehicle violated the Fourth Amendment because the written departmental policy was ambiguous and because officers did not uniformly implement the policy. The court indicated that the policy was ambiguous because it did not explicitly state that closed and unlocked compartments could be opened during an inventory search.

{¶ 19} However, we find that the policy is not ambiguous. The policy requires that "open compartments of the vehicle are to be searched" and that

"locked compartments shall not be opened * * *." By its very terms, this language does not prohibit officers from searching closed compartments. Rather, the only restriction imposed by the policy involves those compartments that are locked. Moreover, Lakewood officers testified that open compartments are simply compartments that are not locked.[3]

---

3. The court of appeals held that the departmental police policy pertaining to inventory searches was ambiguous and that the officers did not uniformly implement the policy. Specifically, the court noted that, "as was testified to at the hearing, one police officer may search closed but unlocked compartments when conducting an inventory search, while another may not." However, we believe that this finding by the court of appeals is a mischaracterization of what the testimony actually revealed during the April 10, 1997 hearing. During this hearing, Officers John Robinson and David Risner both testified that "open compartments" in a vehicle are those compartments that are not locked. When questioned by the trial court, Officer Robinson testified as follows:

"Q. All right. Now, what does this mean, the open compartments of the vehicle are to be searched? Does that mean the unlocked — does that mean unlocked, or what does that mean?

" * * *

"[Q.] What is an open compartment?

" * * *

"A. In a vehicle, such things as like a glove box that's not locked, where there could be valuables.

"Q. Now, do you know what a glove box is in a normal car?

"A. Yes.

"Q. Like it's up on the right-hand side?

"A. Yes, sir.

"Q. If you're behind the steering wheel, you have to reach over on the right side to open it up?

"A. Yes.

"Q. Would you call this an open compartment?

"A. Yes, sir, if it was not locked.

"Q. Even if there's a door on it?

"A. Yes, sir."

In addition, when questioned by counsel for appellee, Officer Risner testified as follows:

"Q. Now, do you know what a closed compartment is?

"A. Yes.

"Q. What is it?

"A. It's a compartment that's closed, but not locked.

"Q. And do you know what a locked compartment is?

"A. Yes, sir.

"Q. What is it?

"A. Locked compartment would be something that you probably use a key for, to open.

"Q. And do you know what an open compartment is?

"A. I would say an open compartment would be something that would be open to plain view."

Following questioning by defense counsel, the court also questioned Risner with respect to

{¶ 20} We believe that the policy at issue sufficiently addresses the inventory of closed compartments within a vehicle and governs the procedures to be used by police. The inventory search of appellee's lawfully impounded vehicle was conducted in good faith and in accordance with reasonable standardized procedures. *Hathman*, *supra*. Clearly, the procedures used were not a subterfuge for an investigatory search. *Id.*, 65 Ohio St.3d at 406, 604 N.E.2d at 745, citing *Opperman*, 428 U.S. at 376, 96 S.Ct. at 3100, 49 L.Ed.2d at 1009. The search of appellee's vehicle simply involved administrative caretaking functions. Moreover, as required by the policy, every item taken from appellee's vehicle by the police during the inventory search was listed on a report.[4] Accordingly, we find that the

---

the meaning of "open compartment" in the context of the policy provision that states that "open compartments of the vehicle are to be searched."

"The Court. All right. Would you read 9.1.1.1 [*sic*] to yourself, sir? Do you have it right there?

"A. Yes, sir.

"The Court. And tell me what an open compartment is.

"A. Open compartment would be something that's unlocked.

"The Court. Well, why wouldn't it say unlocked compartment? Would it mean a compartment that the door is open on?

"A. It could, sir.

"The Court. Do you know what it means?

"A. No. But compartment usually is an open door. Something that's open.

"The Court. All right. So would a console be an open compartment?

"A. It could be closed.

"The Court. Would a closed console be an open compartment?

"A. It could be, sir. If it's not locked. If it's not locked, I'd say that it's closed, but unlocked."

4. The trial court ruled that the Lakewood police policy required that all items removed from the vehicle, *e.g.*, the handgun, compact discs, and a cell phone, should have been listed on a separate report designated as an "inventory sheet." However, the police department does not have a form that is specifically designated for listing inventory items. Rather, the compact discs and cell phone were listed on a document designated as "Lakewood Police Department Property Slip," and the loaded handgun was listed on a separate document designated as "Property Description" report. Accordingly, we believe that the items removed from the vehicle were reported in compliance with the police policy provision that requires that "[a] separate report is to be generated listing any and all property removed from the vehicle." Clearly, all items removed from the vehicle were listed on a report by the police. Thus, the procedures used by the police satisfied the administrative caretaking functions of a proper inventory search. See *State v. Hathman* (1992), 65 Ohio St.3d 403, 405-406, 604 N.E.2d 743, 745, citing *South Dakota v. Opperman* (1976), 428 U.S. 364, 369-371, 96 S.Ct.

search was reasonable in all respects and it complied with the requirements of the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution.

{¶ 21} We also note that a number of appellate courts in this state have upheld the validity of searches of console areas within vehicles pursuant to routine inventory searches. See, *e.g.*, *State v. Brose* (June 13, 1994), Warren App. No. CA93-12-103, unreported, 1994 WL 250096; *State v. Chenault* (Dec. 22, 1993), Lorain App. No. 93CA005521, unreported, 1993 WL 539591; *State v. Conforti* (Nov. 29, 1990), Cuyahoga App. No. 59474, unreported, 1990 WL 183918; *State v. Borgelt* (July 26, 1976), Hamilton App. No. C-75541, unreported, 1976 WL 2628.

{¶ 22} Accordingly, for the foregoing reasons, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings. The handgun seized by the police during the inventory search may be used as evidence by the state to prove the concealed weapon charge against appellee.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents.

---

**PFEIFER, J., dissenting.**

{¶ 23} The trial court correctly granted the defendant's motion to suppress evidence of the concealed weapon. The Lakewood Police Department's written inventory policy sets forth that "open compartments of the vehicle are to be

---

3092, 3097-3098, 49 L.Ed.2d 1000, 1005-1006.

searched." The console the gun was found in was closed. The Lakewood policy does not address closed but unlocked compartments. That being the case, the policy does not meet the requirements of *State v. Hathman* (1992), 65 Ohio St.3d 403, 604 N.E.2d 743. I accordingly dissent.

_____