DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of conviction and sentence entered by the Huron County Court of Common Pleas after defendant-appellant, Kenneth Hurst, entered a plea of no contest to a charge of having weapons while under a disability in violation of R.C. 2923.13(A)(2). From that judgment and from the denial of his motion to suppress, appellant now raises the following assignments of error:
 "1. The Trial Court erred to the prejudice of the Appellant by overruling his Motion to Suppress Evidence where the evidence showed the search to be unconstitutional and warrantless and not subject to an exception to the Fourth Amendment's warrant requirement including the exceptions for an inventory search, a search incident to a lawful arrest, or the automobile exception in relation to contraband.
 "2. The Trial Court erred to the prejudice of the Appellant by concluding the search conducted on July 16, 1998 was a valid inventory search."
On September 21, 1998, appellant was indicted and charged with possession of a firearm while under disability, in violation of R.C. 2923.13(A)(2), and carrying a concealed weapon, in violation of R.C. 2923.12. Those charges arose out of a search of appellant's van that occurred on July 16, 1998. On December 28, 1998, appellant filed a motion to suppress any and all evidence obtained as a result of that search and any and all incriminating statements allegedly made by appellant while he was in custody. The trial court held a hearing on the motion to suppress at which Don Newbill, the Chief of Police of the Wakeman Police Department, testified. Based on that testimony, the trial court filed a decision and judgment entry on January 15, 1999 which included the following findings of fact.
 "On July 16, 1998, Defendant's wife came to the Wakeman Village Police Station to complain that Defendant had assaulted her and she wished to have him charged with domestic violence. She was interviewed by Chief Newbill who observed markings on her body consistent with her complaint of domestic violence. Mrs. Horst [sic] told the chief that her husband could probably be found sleeping in his van behind the Buffalo Cafe and that her husband had guns in the van and may be violent. She informed the chief that her husband was a convicted felon.
"Chief Newbill and Wakeman Officer Craig went to the vicinity of the parking lot of the Buffalo Cafe and called a Code 10 for backup from the sheriff's office. Just as their backup arrived they observed the Defendant's van begin to pull out of his parking space and towards the exit. They immediately maneuvered their vehicles to block Defendant's van. Chief Newbill then approached the van, ordered Defendant out, handcuffed him, placed him under arrest for domestic violence and placed him in the chief's squad car. The van was stopped in the exit of the parking lot, extending a couple of feet into the street.
"Chief Newbill testified that it was the unwritten policy of the Wakeman Police Department not to move a vehicle in the possession of an arrested person, but to tow and impound the vehicle. Towing and impounding services were performed by Northside Brake and Muffler of Norwalk. The Wakeman Police Department had a written inventory search policy that had been adopted on July 1, 1998. The policy required an inspection and inventory of all vehicles impounded. There was a form to record the circumstances of the impound, the reason for the impound, the condition of the vehicle and the contents of the vehicle. Chief Newbill testified that he performed an inventory of the vehicle at the scene before it was towed. His inventory consisted of three handwritten pages of contents. Among the contents were guns and ammunition.
"Chief Newbill testified that he gave Defendant Miranda warnings when he placed him in the squad car. The chief originally testified that after giving the Miranda warnings he asked Defendant if he had any weapons and drugs in the van and the Defendant responded affirmatively. He subsequently corrected himself, testifying that he had not asked the Defendant about drugs and his testimony about the weapons was contradictory.
"The Chief's testimony about observing weapons in plain view was also confused. At first he testified he observed a gun on the front passenger seat, but then admitted that his inventory did not show a gun there. He also claimed to have observed two gun butts protruding from a tote box full of clothing on the floor behind the front seat. His testimony gave the impression that he might be trying to justify his search on the ground that he had probable cause to search incident to an arrest because the items seized were in plain view, but the chief insisted in his testimony that the search he performed was an inventory search."
Based on these findings of fact, the trial court concluded that Chief Newbill's arrest of appellant on a domestic violence charge was lawful and that his search of appellant's van was a valid inventory search. In particular, the court held that the impoundment of the van and the inventory of the contents was done pursuant to a written, standardized procedure and that the inventory was recorded on a standardized form. With regard to the inventory form, the court noted that although Chief Newbill checked "felonious use" as the reason for the impoundment, this was most likely an inadvertent mistake rather than an attempt to deceive. Accordingly, the court denied appellant's motion to suppress. As a result, appellant changed his plea to no contest to the charge of having weapons while under a disability and the state dismissed the carrying a concealed weapon charge. Thereafter, appellant was convicted of having weapons while under a disability and was sentenced accordingly.
Appellant's assignments of error are interrelated and will be addressed together. Appellant contends that the search of his van was not authorized under any exception to theFourth Amendment's warrant requirement and, therefore, was unconstitutional.
In reviewing a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions of the trier of fact. State v. DePew (1988), 38 Ohio St.3d 275,277, certiorari denied (1989), 489 U.S. 1042; State v.Fanning (1982), 1 Ohio St.3d 19, 20. Where there is substantial evidence to support the factual findings of the trial court, its ruling on a motion to suppress will not be disturbed on appeal absent an error of law. DePew, supra.
The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. Searches and seizures conducted outside of the judicial process, without a warrant based on probable cause, are per se
unreasonable, subject to several specific established exceptions.Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219. Initially, the burden is on the party challenging the legality of the search or seizure to establish that such was conducted without a warrant.Xenia v. Wallace (1988), 37 Ohio St.3d 216, 218. Once a warrantless search or seizure is established, however, the burden shifts to the state to put forth evidence proving the validity of the search or seizure. Id. at paragraph two of the syllabus.
In Colorado v. Bertine (1987), 479 U.S. 367, 371, the United States Supreme Court determined that inventory searches are "a well-defined exception to the warrant requirement of theFourth Amendment." "Inventory searches involve administrative procedures conducted by law enforcement officials and are intended to (1) protect an individual's property while it is in police custody, (2) protect police against claims of lost, stolen or vandalized property, and (3) protect police from dangerous instrumentalities." State v. Mesa (1999), 87 Ohio St.3d 105, 109, citing South Dakota v. Opperman (1976), 428 U.S. 364, 369. "Because inventory searches are administrative caretaking functions unrelated to criminal investigations, the policies underlying the Fourth Amendment warrant requirement, including the standard of probable cause, are not implicated." Mesa, supra at 109, citing Opperman, supra at 370. Rather, "[t]o satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine." State v.Hathman (1992), 65 Ohio St.3d 403, paragraph one of the syllabus.
In the present case, appellant first argues that his van was not lawfully impounded because the Wakeman Police Department did not have any standardized procedures or guidelines for determining when a motor vehicle should be impounded. Rather, the decision of whether to impound a vehicle was left to the unfettered discretion of each officer. Appellant supports this argument by quoting a portion of Chief Newbill's testimony in which he attempted to explain the impound policy of the Wakeman Police Department:
 "Q: So your policy is any time you stop somebody for any kind of a crime like, say, domestic violence that you always tow their vehicle?
"A. No.
"Q. So what is the policy, Officer Newbill?
 "A. If the person is arrested, depending on the type of crime that he committed, or the circumstances surrounding each arrest, it's the officer's discretion at that point whether the vehicle needs to be towed or not."
The Wakefield Police Department's Vehicle Impound Tow Policy does not specify under what circumstances the officers can impound a vehicle. Nevertheless, Chief Newbill did testify that the department has a strict policy that prohibits officers from moving vehicles. Because appellant's van was in a driveway, protruding several feet into the street, and because the department policy prohibited the officers from moving the van, Chief Newbill determined that the van had to be impounded. InBertine, supra at 375, the United States Supreme Court stated that nothing in the case law governing inventory searches "prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." In our view, the evidence submitted below supports a finding that Chief Newbill's decision to impound the van was made in accordance with standard policy (officers are not permitted to personally move a vehicle) and was made on the basis of something other than suspicion of evidence of criminal activity (the van was blocking a driveway and protruding into a street). Accordingly, we cannot say that the van was unlawfully impounded.
Appellant further asserts that even if the van was lawfully impounded, the inventory search was not conducted in good faith or in accordance with reasonable standardized procedures or established routines. The Wakeman Police Department's impound policy states that "[a]n inventory and inspection will be conducted on all motor vehicles impounded or removed by the Wakeman Police Department pursuant to Wakeman Codified Ordinance." The policy then provides in pertinent part that the vehicle inventory shall consist of a thorough inventory of the vehicle and its contents, including any compartments or containers found within the vehicle; that officers are not to use forcible entry to gain access to any locked compartments or containers within the vehicle; that the vehicle shall be inspected for any obvious exterior and interior damage; that the VIN number shall be documented and immediately verified through L.E.A.D.S.; and that the impound inventory and or inspection shall be documented on the prescribed forms and filed prior to the end of the impounding officers "tour of duty." Appellant asserts that this policy is nothing more than an invitation to rummage through a motor vehicle in search of evidence of a crime. In particular, appellant notes that the policy does not explain how items are to be described, does not specify that weapons are to be segregated and marked with evidence tags, and does not specify that the impounding officer keep track of where personal property was found in the vehicle or whether the inventory was done in the presence of a witness.
The issue here, however, is whether this policy is reasonable in light of the important governmental interests served by inventory searches: "protecting property which is in police custody, * * * ensuring against frivolous claims of loss, stolen or vandalized property, and * * * guarding the police from danger."Hathman, supra at 405-406, citing Opperman, supra at 369-371. In light of these interests, we fail to see how the Wakeman Police Department's inventory search policy is unreasonable. "The fact that this court might, as a matter of hindsight, be able to devise equally reasonable rules requiring a different procedure does not render a search executed pursuant to established standard procedures, such as those in this case, constitutionally infirm."State v. Gordon (1994), 95 Ohio App.3d 334, 339, citing Bertine,supra at 374. The trial court's finding that the inventory search of the van was conducted in accordance with these reasonable standardized procedures was supported by the evidence.
With regard to appellant's argument that the search of his van was not conducted in good faith, we note that the court clearly recognized inconsistencies in Chief Newbill's testimony. Specifically, the court addressed Chief Newbill's completion of the inventory form in its decision, finding that the Chief's identification of "felonious use" as the reason for the search was an inadvertent mistake. Nevertheless, the court concluded that the evidence supported a finding that the search was conducted in good faith. Because this factual finding is supported by competent credible evidence, we are bound to accept it. State v. Williams
(1993), 86 Ohio App.3d 37, 41, overruled on other grounds as stated in Village of McComb v. Andrews (Mar. 22, 2000), Hancock App. No. 5-99-41, unreported.
Accordingly, we find that the trial court did not err in denying appellant's motion to suppress and both assignments of error are not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Huron County Court of Common Pleas is affirmed.
Court costs of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ____________________________ Mark L. Pietrykowski, J.
 James R. Sherck, J., Richard W. Knepper, P.J.