This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, William L. Miller, appeals his conviction in the Summit County Court of Common Pleas based upon the denial of his motion to suppress evidence. We affirm.
 I.
At approximately 2:00 a.m., on March 4, 2000, Officer Jack Simone of the Copley Police Department was stopped in the driveway of Copley Plaza, a local shopping area. Nothing initially drew his attention to Mr. Miller's vehicle as it and another vehicle passed his location. Officer Simone pulled out of the driveway and proceeded on Copley Road in the same direction as the vehicles that had just passed. There was a third vehicle, belonging to Mr. Miller's friend Mr. Weygandt, in between Officer Simone's police cruiser and Mr. Miller's black Mercedes. As Officer Simone proceeded down Copley Road, he observed Mr. Miller's vehicle moving erratically, crossing over the center intermittent double yellow line more than four times and the white fog line more than four times in the distance of a half-mile. Mr. Miller then made a turn onto Schocolog Road; Officer Simone continued to follow him, now without any vehicle between Mr. Miller's vehicle and his own. Mr. Miller was still weaving, crossing both the center double yellow line and the white fog line an additional three or four times. Specifically, Officer Simone testified that Mr. Miller's car crossed the lane lines by as much as two tire widths. At that point, Officer Simone turned on the overhead flashing lights on his patrol vehicle. Mr. Miller immediately pulled over and stopped his vehicle.
Officer Simone stopped his vehicle behind that of Mr. Miller and walked up to the driver's side window of Mr. Miller's vehicle. As Officer Simone approached Mr. Miller's vehicle, he noted that the window was rolled-down and smelled the odor of alcohol emanating from Mr. Miller's vehicle and person. Officer Simone further observed that Mr. Miller had bloodshot eyes and that his speech was slurred. Officer Simone, suspecting Mr. Miller to be under the influence of alcohol, asked Mr. Miller to step from his vehicle. Mr. Miller complied but encountered difficulty in exiting his vehicle, necessitating Officer Simone's aid.
Officer Simone then performed several field sobriety tests on Mr. Miller. First, Officer Simone performed the horizontal gaze nystagmus test; Mr. Miller was unable to smoothly follow an object with his eyes. Next, Officer Simone performed the walk and turn test, in which one must walk nine steps, heel to toe, along a line and then turn. Mr. Miller was unable to touch his heel to toe at any point during the test and fell backwards while making the turn. Officer Simone also performed the finger on nose test, during which one must stand with one's hands out to one's sides, head back, and eyes closed, and touch one's fingers to one's nose. Mr. Miller failed in four of six attempts. In response to Officer Simone's request that he recite the alphabet and accomplish the one leg stand test, Mr. Miller told Officer Simone that he was illiterate and had a leg injury that would impair his ability to perform these field sobriety tests. Mr. Miller had earlier informed Officer Simone that he had sustained an injury while playing tennis and was limping when he exited his vehicle. In short, Mr. Miller failed the field sobriety tests that he attempted and refused to perform two other tests due to being illiterate and having a leg injury. Officer Simone placed Mr. Miller under arrest for driving under the influence of alcohol or drugs, in violation of R.C. 4511.19(A)(1) and (3). Pursuant to normal procedure and because no passenger was present to take charge of the vehicle, Mr. Miller's vehicle was towed from the scene.
In compliance with Copley Township Police policy, Officer Simone conducted an inventory search before having Mr. Miller's vehicle towed. In the compartment located between the front seats of the car, Officer Simone found a small glass container containing a white powder that tested positive for cocaine. The compartment also contained a small amount of marijuana.
On March 13, 2000, Mr. Miller was indicted by the Summit County Grand Jury on four counts: (1) possession of cocaine, in violation of R.C.2925.11; (2) possession of marijuana, in violation of R.C. 2925.11; (3) driving under the influence of alcohol or drugs, in violation of R.C.4511.19(A)(1) and (3); and (4) improper lane change, in violation of R.C. 4511.33.
Mr. Miller moved to suppress the evidence seized by the police as a result of the inventory search of his vehicle. On May 8, 2000, the trial court held an evidentiary hearing on Mr. Miller's motion to suppress. Mr. Miller filed a supplement to his motion to suppress, referencing evidence presented at the hearing on May 18, 2000. The trial court, based on the totality of the circumstances, denied Mr. Miller's motion to suppress in an order journalized on July 20, 2000. On July 26, 2000, Mr. Miller retracted his not guilty plea and entered a plea of no contest; the trial court found him guilty and sentenced him accordingly. This appeal followed.
Mr. Miller asserts one assignment of error:
 THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE WHERE A) THERE WAS NO REASONABLE SUSPICION OF CRIMINAL ACTIVITY TO JUSTIFY THE INITIAL STOP; B) THERE WAS NO PROBABLE CAUSE TO JUSTIFY AN ARREST; AND C) THE INVENTORY SEARCH WAS ILLEGALLY CONDUCTED WITHOUT OR BEYOND THE SCOPE OF ANY ESTABLISHED DEPARTMENTAL POLICY OR PROCEDURE GOVERNING SUCH SEARCHES.
 Mr. Miller asserts that the trial court erred in failing to order the suppression because the officer did not possess reasonable suspicion to make the initial stop, the officer lacked probable cause to make the arrest, and the inventory search was not conducted within the scope of established departmental policies. We disagree.
When a warrantless search is at issue, "as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." Ornelas v. United States (1996),517 U.S. 690, 699, 134 L.Ed.2d 911, 920. "`[T]he weight of the evidence and credibility of witnesses are primarily for the trier of the facts. * * * This principle is applicable to suppression hearings as well as trials.'" (Alteration original.) State v. Hill (1996), 75 Ohio St.3d 195,208, quoting State v. Fanning (1982), 1 Ohio St.3d 19, 20. Moreover, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."Ornelas, 517 U.S. at 699, 134 L.Ed.2d at 920. Accordingly, we will accept the trial court's factual determination if it is supported by competent, credible evidence; however, without deference to the trial court's conclusion, we will determine "whether, as a matter of law, the facts meet the appropriate legal standard." State v. Curry (1994),95 Ohio App.3d 93, 96. With the above standard in mind, we will address each of Mr. Miller's arguments in turn.
First, Mr. Miller avers that Officer Simone lacked reasonable suspicion to justify an investigatory stop. It has been noted that "[i]t is established law that `an officer does not need probable cause to make a traffic stop; reasonable suspicion based on specific and articulable facts that a traffic law is being violated * * * is sufficient to meet constitutional requirements.'" (Citation omitted.) State v. Lloyd
(1998), 126 Ohio App.3d 95, 102. However, if the traffic stop is based on a traffic violation, such as one's failure to use a turn signal, which occurred in the officer's presence, the officer possesses probable cause to stop the vehicle. Dayton v. Erickson (1996), 76 Ohio St.3d 3, 11.
"Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Id. at syllabus; see, also, State v. Robinette (1997),80 Ohio St.3d 234, 239. "Probable cause exists where `the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." (Alterations original.) Brinegar v.United States (1949), 338 U.S. 160, 175-76, 93 L.Ed. 1879, 1890, quoting Carrollv. United States (1924), 267 U.S. 132, 162, 69 L.Ed. 543, 555.
In the present case, Officer Simone testified that Mr. Miller was driving erratically, crossing over both center and curbside lane lines several times within two tenths of a mile. R.C. 4511.33(A) provides: "A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." Several Ohio courts have held that a de minimus lane violation does not justify an investigatory traffic stop concerning a driving while intoxicated violation without some other evidence of impairment. Lloyd,126 Ohio App.3d at 101-03. However, as previously mentioned, observing facts that would warrant a man of reasonable caution in the belief that a violation of the traffic laws has been committed is sufficient to give Officer Simone probable cause to stop Mr. Miller. See Erickson, 76 Ohio St.3d at syllabus.
Initially, Officer Simone noticed that Mr. Miller was "traveling outside of the lane of travel" and crossing both the center line and the white fog line on the right side of the roadway. He noted that no defects in the roadway and no obstacles in the roadway existed which would make it impracticable to travel "within a single lane or line of traffic" pursuant to R.C. 4511.33(A). Hence, Officer Simone, upon observing a violation of R.C. 4511.33(A), had probable cause to stop Mr. Miller and issue a traffic citation. See State v. Cockrell (July 25, 1994), Ross App. No. 93CA1957, unreported, 1994 Ohio App. LEXIS 3372, at *9-10. "Obviously, where probable cause to issue a citation exists, the lesser threshold of a reasonable articulate [sic] suspicion has been satisfied." Id. at *10.
Mr. Miller's close friend, Mr. Weygandt, who was driving between Officer Simone and Mr. Miller for the period of the time during which Officer Simone observed Mr. Miller's erratic driving, testified that Mr. Miller was not driving over the lane lines. Mr. Miller asserts that Officer Simone is not credible and that the trial court should have believed the testimony of Mr. Weygandt. However, as the trial court noted, Mr. Weygandt is a friend of Mr. Miller, and hence, has a motive to help his friend through his testimony. In fact, Mr. Weygandt was attending the same gathering as Mr. Miller on the night in question and both were proceeding home from that gathering at the time Officer Simone noticed them. As the trial court had the opportunity to observe the witnesses' testimonies and adjudge their credibility, we conclude that the trial court did not err in determining that based on the evidence adduced at the hearing, Officer Simone had probable cause to stop Mr. Miller. See State v. Smith (1991), 61 Ohio St.3d 284, 288; see, also,Hill, 75 Ohio St.3d at 208 (stating that the trial court's disbelief of a witness where other witnesses contradicted that witness's testimony did not present grounds for reversal). Accordingly, we adduce that the original traffic stop was supported not only by reasonable suspicion but by probable cause.
Second, Mr. Miller asserts that Officer Simone lacked probable cause to arrest him for driving under the influence of alcohol or drugs, in violation of R.C. 4511.19(A)(1) and (3).
R.C. 4511.19 provides:
 (A) No person shall operate any vehicle * * *, if any of the following apply:
 (1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse;
* * *
 (3) The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath[.]
 The Ohio Supreme Court, in State v. Homan (2000), 89 Ohio St.3d 421, 427, stated:
 In determining whether the police had probable cause to arrest an individual for DUI, we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. In making this determination, [a court] will examine the "totality" of facts and circumstances surrounding the arrest.
 (Citations omitted). Furthermore, "probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance [on the field sobriety tests]." Id.
Initially, Officer Simone witnessed Mr. Miller driving erratically, crossing the center and fog lines numerous times. Officer Simone, therefore, initiated a traffic stop of Mr. Miller due to his violation of R.C. 4511.33(A). As Officer Simone approached Mr. Miller's vehicle window pursuant to that stop, he detected the smell of alcohol emanating from the vehicle and Mr. Miller's person. He also noticed that Mr. Miller's eyes were bloodshot, that his speech was slurred, and that he appeared confused. Furthermore, although the trial court apparently did not consider any of the field sobriety tests in reaching its conclusion, Officer Simone also performed several field sobriety tests on Mr. Miller, which he failed.[1] As previously discussed, probable cause to arrest need not be based on a suspect's field sobriety teats. Homan,89 Ohio St.3d at 427 (finding that erratic driving, red, glassy eyes, the smell of alcohol on one's breath, and an admission that one had consumed some alcohol were facts sufficient to support a finding of probable cause to arrest for driving under the influence). Accordingly, based solely on the facts considered by the trial court, we conclude that the evidence presented at the suppression hearing was sufficient to establish probable cause to arrest Mr. Miller for driving under the influence of alcohol.
Lastly, Mr. Miller avers that trial court erred in holding that the Copley Police Department's written policy permitted the opening of an unlocked, closed compartment of a vehicle during an inventory search. Specifically, he argues that the policy only addresses the opening of closed containers and does not address the opening of either locked or unlocked compartments of a vehicle. Mr. Miller, therefore, asserts that the inventory search conducted in the present case was constitutionally invalid, and accordingly, all evidence seized as a result of the search should be suppressed. We disagree.
Inventory searches are deemed "a well-defined exception to the warrant requirement of the Fourth Amendment." Colorado v. Bertine (1987),479 U.S. 367, 371, 93 L.Ed.2d 739, 745. The justification for inventory searches stems from three administrative caretaking functions: (1) protecting an individual's property while it is in police custody; (2) protecting the police from claims of lost, stolen, or vandalized property; and (3) protecting the police from danger. South Dakota v.Opperman (1976), 428 U.S. 364, 369, 49 L.Ed.2d 1000, 1005. Since an inventory search advances administrative caretaking functions, "the policies underlying the Fourth Amendment warrant requirement, including the standard of probable cause, are not implicated." State v. Mesa
(1999), 87 Ohio St.3d 105, 109. "Rather, the validity of an inventory search of a lawfully impounded vehicle is judged by theFourth Amendment's standard of reasonableness." Id.
In Mesa, the Ohio Supreme Court addressed whether police officers violate the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution when they open unlocked, closed compartments of an automobile during an inventory search of a lawfully impounded vehicle. The court held:
 An inventory search of a compartment of a lawfully impounded vehicle does not contravene the Fourth Amendment to the United States Constitution or Section 14, Article I of the Ohio Constitution where the search is administered in good faith and in accordance with reasonable police procedure(s) or established routine.
Id. at syllabus.
The written Copley Police Department policy at issue here states:
 Any vehicle lawfully impounded and not subject to immediate release under the guidelines of a private tow must be inventoried. If during such an inventory closed containers are encountered, such closed containers shall be opened and their contents inventoried.
 Mr. Miller argues that because the written policy specifies "containers" rather then "compartments," Officer Simone exceeded the scope of this policy by searching a compartment in the vehicle. However, the definition of "container" includes "a receptacle (as a box or jar) or a formed or flexible covering for the packing or shipment of articles, goods, or commodities [or] a portable [usually] metal compartment in which freight is placed for convenience of movement [especially] on railroad container cars[.]" Webster's Third New International Dictionary (1993) 491. Whereas a "compartment" is, among other things, "a small chamber, receptacle, or container[.]" Id. at 462. Hence, we find that the term container includes the term compartment as a type of container. Further, Officer Simone testified that the inventory procedure covered the inventory of compartments within the vehicle. See Mesa, 87 Ohio St.3d at 110. Consequently, we conclude that the policy at issue sufficiently addresses the inventory of closed compartments within a vehicle and governs the procedures to be used by police.
Mr. Miller's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
______________________________________ WILLIAM G. BATCHELDER
BAIRD, J., CARR, J. CONCUR.
[1] Mr. Miller claimed that he was unable to perform at least two of the field sobriety tests because he had a recently injured ankle and because he was illiterate. As a result of Mr. Miller's claims, the trial court apparently did not consider any of the field sobriety tests in its denial of Mr. Miller's motion to suppress.