The STATE of Ohio, Appellant,

v.

TAYLOR et al., Appellees.

[Cite as *State v. Taylor* (1999), 135 Ohio App.3d 182.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

Nos. CA99–05–042 and CA99–05–043.

Decided Oct. 25, 1999.

*Donald W. White*, Clermont County Prosecuting Attorney, and *David H. Hoffmann*, for appellant.

*Haynes & Snyder* and *W. Stephen Haynes*, for appellees.

Powell, Presiding Judge.

In an accelerated appeal concerning Ohio's "knock and announce" statute, R.C 2935.12,[1] plaintiff-appellant, the state of Ohio, appeals the decision of the Clermont County Court of Common Pleas to grant the motion to suppress of defendants-appellees, Larry Taylor and Sandra Taylor.[2] We affirm the decision of the trial court.

At daybreak on August 14, 1998, Deputy Matthew Farmer of the Clermont County Sheriff's Department was part of an eight-person police presence at 3895 Mark Court, Union Township, Clermont County, the residence of Larry and Sandra Taylor. The police were attempting to serve a warrant based on information that evidence of drug trafficking was inside the residence. The police knocked on the door, and, after pausing approximately three to four seconds, forcibly entered the residence. According to the return on the search warrant, once inside the residence, the police searched it and found $560 in currency, two digital scales, a grow light, ten bags of marijuana, and seven firearms.

Sandra Taylor was indicted on one count each of having knowingly obtained, possessed, or used marijuana in an amount exceeding two hundred grams, in violation of R.C. 2925.11(A), and having knowingly prepared for shipment, transported, delivered, prepared for distribution, or distributed marijuana in an amount exceeding two hundred grams, in violation of R.C. 2925.07. Larry Taylor was separately indicted on identical charges.

The Taylors filed a motion to suppress all the evidence the police gathered inside the residence. The Taylors argued that the search violated Ohio's knock-and-announce statute and that the search was unreasonable under the Fourth Amendment. After a hearing, the trial court granted the motion to suppress. From this decision, appellant filed a timely notice of appeal, and presents one assignment of error for our review:

"The trial court erred in granting the defendants' motion to suppress."

On appeal, appellant argues that the police did not violate the knock-and-announce statute, R.C. 2935.12, or the Fourth Amendment. Because an issue of constitutional law is involved, we review the legal ruling of the trial court

---

1. R.C. 2935.12 states: "When * * * executing an arrest warrant * * *, the peace officer, law enforcement officer, or other authorized individual * * * executing the warrant or summons may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention * * * to execute the warrant or summons, he is refused admittance * * *."

2. The appeal was properly certified by appellant pursuant to Crim.R. 12(J).

*de novo. State v. Baker* (1997), 118 Ohio App.3d 654, 658, 693 N.E.2d 1131, 1133–1134. The knock-and-announce statute, which is derived from the common law, requires the police, absent certain circumstances discussed below, to knock at a residence, announce their presence, and pause to allow a response. After pausing, the police are generally entitled to forcibly enter a residence.

The pregnant question is the extent to which the police must pause before forcibly entering the residence. In *State v. Amundson* (1996), 108 Ohio App.3d 438, 670 N.E.2d 1083, this court reversed the trial court, finding that the police had complied with Ohio's knock-and-announce statute. However, the facts of *Admundson* are significantly different from those in this case. In *Admundson*, we described the facts as follows:

"The record indicates that three police vehicles pulled into appellee's driveway: a black and white twelve-passenger van marked with a light bar and a thirteen-inch diameter seal bearing the designation 'Sheriff' on the side and back, a marked sheriff's patrol car, and an unmarked police car. Upon their arrival, seven to ten police officers, shouting 'deputy sheriff, search warrant,' ran to various positions around the house. The police officers included drug unit officers wearing ski masks and caps indicating 'Deputy Sheriff,' deputies of the sheriff's department wearing standard uniforms, and members of a 'S.W.A.T.' team wearing helmets, goggles and jackets with 'Deputy Sheriff' written across the chest with five-inch yellow letters.

"The officers continued to shout their notice after they assumed their positions around appellee's house. Deputy Sheriff Christopher Heist testified at the hearing on the motion to suppress that when he arrived at appellee's home, he 'pounded' on the casement of an outer storm door 'about as hard as [he] could hammer on it,' while continuing to shout his notice 'about as loud as [he] could,' until all the members of the sheriff's department were in place around appellee's home. Heist testified that after hearing no response from the occupants inside, he tried to open the storm door and found that it was locked. Heist, acting upon a 'constructive refusal to admit,' then applied a pry bar in an attempt to open the door.

"The record indicates that during this time other members of the sheriff's department were still screaming 'search warrant, Sheriff's Office.' Heist eventually succeeded in prying the storm door open on his third attempt. Heist testified that he held the storm door open with his back and began pounding on the main wooden entry door while shouting his notice. After hearing no response from the occupants inside, Heist, again acting upon a constructive refusal to admit, tried to gain access to the house through the entry door and found the door secured. Heist motioned to a fellow sheriff's deputy to apply a battering

ram so that members of the sheriff's department could enter the home." (Citation omitted.) *Id.* at 439–440, 670 N.E.2d at 1084.

In *Admundson,* the police repeatedly warned the residents that they had a search warrant and never received any response. The residents had a fair opportunity to open the "main wooden entry door" before the forcible entry. In this case, appellees were given three to four seconds, which, absent exigent circumstances, is not a reasonable opportunity for the residents to open the door of their own volition.

The United States Supreme Court has held that the knock-and-announce rule is part of the Fourth Amendment guarantee of protection from unreasonable search and seizure. *Wilson v. Arkansas* (1995), 514 U.S. 927, 931, 115 S.Ct. 1914, 1916, 131 L.Ed.2d 976, 980–981. Violation of the knock-and-announce rule is not merely a statutory violation; it is a violation of the reasonableness requirement of the Fourth Amendment. *Id.* at 934, 115 S.Ct. at 1917–1918, 131 L.Ed.2d at 982–983. However, appellant argues that the marijuana need not be suppressed because of the inevitable-discovery and independent-source doctrines. In this case, the evidence was not gathered from a source even arguably independent of the constitutional violation. See *Murray v. United States* (1988), 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472; Katz, Ohio Arrest, Search and Seizure (1999 Ed.) 71–72, Section 2.17. Therefore, the independent-source doctrine does not apply.

Similarly, the inevitable-discovery doctrine does not apply where the evidence was gathered directly as a result of a constitutional violation and appellant cannot show that the evidence could have been gathered from an alternative legal method or procedure. See *State v. Perkins* (1985), 18 Ohio St.3d 193, 18 OBR 259, 480 N.E.2d 763 (weapon illegally obtained, alternatively might have been discovered under the plain view doctrine). See, also, Katz at 74–75, Section 2.18. If this court were to apply the inevitable-discovery doctrine to this case, the knock-and-announce rule would cease to have any meaningful deterrent value.

Appellant argues that civil remedies would still be available to victims of illegal police conduct. However, civil remedies are in addition to the deterrent value of excluding evidence illegally and unconstitutionally obtained. The assignment of error is overruled.

*Judgment affirmed.*

WALSH and VALEN, JJ., concur.