The STATE of Ohio, Appellant,

v.

HUNTER, Appellee.

[Cite as *State v. Hunter,* 153 Ohio App.3d 628, 2003-Ohio-4204.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19801.

Decided Aug. 8, 2003.

Natalia S. Harris, Montgomery County Assistant Prosecuting Attorney, for appellant.

Arvin S. Miller, Montgomery County Assistant Public Defender, for appellee.

WOLFF, Judge.

{¶ 1} The state of Ohio appeals from a judgment of the Montgomery County Court of Common Pleas, which granted Tia Hunter's motion to suppress.

{¶ 2} The evidence established the following facts:

{¶ 3} At approximately 9:00 p.m. on December 12, 2002, nine officers from the Dayton Police Department arrived at 1319 Superior Avenue, Hunter's residence, to execute a search warrant. The warrant authorized them to search the residence for evidence of drug trafficking and drug possession.

{¶ 4} Upon arriving at 1319 Superior Avenue, the police lined up in the back of the house, preparing to go around the house and enter through the front door. The first two officers in line were Detectives Timothy Braun and Douglas Hall. Also near the front of the line were two officers carrying the equipment used to break open doors — a "hooligan," which is basically a pry bar, and a ram. At the end of the line was Lieutenant Michael Wilhelm, who carried a battery-operated megaphone.

{¶ 5} The line of officers proceeded from the back of the house around to the front porch. On the front porch, Hunter's sister, Yalonda Hunter, and another woman were talking to the occupants of the house through the front door. The interior door of the house was open, and the exterior door, which was made of Plexiglas and provided a clear view of the occupants inside, was closed. As the police reached the front porch, they were spotted by Yalonda Hunter and her companion, who began screaming "police" and "po-po," which is a slang term for police. Several things then began to happen almost simultaneously. Lieutenant Wilhelm began announcing quickly and repeatedly over the megaphone, "1319 Superior, Dayton Police, search warrant." The front of the line reached the door, through which they could see the occupants of the house, including Hunter and her cousin Curtis Hunter. Detective Braun knocked quickly. The occupants of the house looked surprised and stared at the police with wide eyes. Detective Braun told the officer operating the hooligan to set the tool in the door, and the officers broke open the door and entered the residence. As they were entering, Detectives Braun and Hall observed Curtis Hunter remove something from his

pocket and place it in the cushions of the sofa on which he sat. They testified that they had been unable to see what the object was but that they had been concerned that Curtis might be arming himself. The total time from when the first officers reached the porch until they made entry into the residence was less than ten seconds. The time from when Detectives Braun and Hall reached the glass door until they made entry was two to five seconds. The announcement had been made over the megaphone two to five times before the police broke open the door.

{¶ 6} Upon entering the residence, the police immediately secured the occupants. They observed marijuana on a bar next to where Hunter had been standing. Two grams of crack cocaine were found in a closet. Hunter was then arrested and read her *Miranda* rights, following which she made some statements to the police.

{¶ 7} Hunter was indicted on December 20, 2002, on possession of crack cocaine in an amount greater than or equal to one gram but less than five grams in violation of R.C. 2925.11(A). On January 14, 2002, Hunter filed a motion to suppress. A hearing was held on February 4, 2003. Following the hearing, both Hunter and the state filed supporting memoranda. On February 27, 2003, the trial court granted Hunter's motion to suppress, concluding that the police had violated the knock-and-announce rule of R.C. 2935.12 and the Fourth Amendment in executing the search warrant.

{¶ 8} The state appeals, raising one assignment of error:

{¶ 9} "The trial court erred when it sustained Hunter's motion to suppress, as the police complied with Ohio's 'knock and announce' statute before gaining entry to execute the search warrant, and because a 'knock and announce' violation does not invoke application of the exclusionary rule."

{¶ 10} The state argues that the trial court erred in granting Hunter's motion to suppress. Specifically, it contends that the police did not violate the knock-and-announce rule in executing the search warrant, that exigent circumstances justified the entry, and that the inevitable-discovery rule should apply to prevent the suppression of the evidence.

{¶ 11} Initially, we note that the following standard governs our review of a trial court's decision regarding a motion to suppress: "[W]e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498.

{¶ 12} The common-law knock-and-announce rule forms part of the reasonableness inquiry under the Fourth Amendment and requires that officers knock on the door and announce their identity and purpose before forcibly entering a residence. See *Wilson v. Arkansas* (1995), 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976; *State v. Allen* (Jan. 18, 2002), Montgomery App. No. 18788, 2002 WL 63105. The rule has been codified in Ohio in R.C. 2935.12, which provides:

{¶ 13} "When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant, or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the warrant or summons may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance, but the law enforcement officer or other authorized individual executing a search warrant shall not enter a house or building not described in the warrant."

{¶ 14} Courts have recognized that silence constitutes an implied refusal of admittance. See *State v. Edmonds*, Montgomery App. No. 19129, 2002-Ohio-3807, 2002 WL 1728014, ¶ 18.

{¶ 15} The trial court concluded, and the record supports, that the officers in this case both knocked and announced their identity and purpose. Therefore, the only issue before us is whether they waited long enough after doing so before entering the residence. The question of how long police must wait after knocking and announcing their presence before forcibly entering a residence depends upon the facts of the particular case. See *Allen*, supra. The length of time involved is one part of that inquiry. However, forcible entry prior to a refusal may be justified by exigent circumstances when it appears that evidence "can and will be destroyed on short notice, or that compliance could place the officers in peril of great bodily harm." Id.; see, also, *State v. Boyd* (May 21, 1993), Montgomery App. No. 13425, 1993 WL 169104. Courts have upheld entry after 20 seconds, see *Edmonds*, supra; within five to ten seconds after police announced their identity where a drug deal had recently taken place at the residence, it was a time of day when people were unlikely to be in bed, and there was concern that evidence would be destroyed if the police delayed, see *Allen*, supra; and within ten to 15 seconds where a person was seen running across the top stairs and there was concern that evidence would be destroyed, *Boyd*, supra. However, courts have found a violation where entry was made after three to four seconds and no exigent circumstances existed. See *State v. Taylor* (1999), 135 Ohio App.3d 182, 186, 733 N.E.2d 310. See, also, *State v. Dixon* (2001), 141 Ohio App.3d 654, 661, 752 N.E.2d 1005 (finding a violation where entry was made immediately after second announcement, which occurred

ten to 15 seconds after initial announcement, and no exigent circumstances existed).

{¶ 16} The state's argument is twofold. First, it argues that the record establishes that there was an implied refusal of admittance and therefore that the knock-and-announce rule was not violated. Second, it argues that exigent circumstances existed to allow the police officers to deviate from the precise requirements of R.C. 2935.12.

{¶ 17} We must defer to the trial court's findings of fact, which we conclude are supported by competent, credible evidence. Based upon our review of the record, we are also able to fill in some of the facts not discussed by the trial court. The state's version of events differs significantly from the facts in the record and as stated by the trial court. The state argues that Lieutenant Wilhelm began announcing the presence and purpose of the police, then the officers began banging on the door and demanding that it be opened, then they observed Curtis Hunter remove something from his pocket and place it in the sofa cushions, then they entered. There are several problems with this recitation of events. First, all of these events were happening nearly simultaneously within a very brief time period, spanning less than ten seconds. Second, although the trial court does not discuss it in its statement of facts, the record is clear that the officers observed Curtis Hunter place something from his pocket between the cushions after the decision had been made to break open the door. It appears that the movement was seen as the door was already being broken open and the officers were entering the residence, rather than before the decision was made, as the state contends. In fact, Detective Braun testified that he had told the officer with the hooligan to set the tool in the door immediately after he had knocked. He further testified that he had seen Curtis Hunter's movement "as the door was opening."

{¶ 18} Based upon these facts, we must agree with the trial court that the police officers violated the knock-and-announce rule. Lieutenant Wilhelm testified that he had announced the presence of police only two to five times before entry was made. This was happening simultaneously with the other officers reaching the glass door and Detective Braun knocking quickly. There was insufficient time for the occupants of the house to register anything other than shock at the officers' presence. The testimony of both Detective Braun and Detective Hall supports this fact. Therefore, we cannot find that there was an implied refusal of admittance in the brief time span between the first announcement of the officers' presence and the time that the officers broke open the door.

■■ {¶ 19} Furthermore, no exigent circumstances justified entry at the time it was made. Some courts have held that the police may avoid strict compliance with the knock-and-announce rule where the evidence sought is by its

nature capable of being quickly and easily destroyed. See *State v. Roper* (1985), 27 Ohio App.3d 212, 213, 27 OBR 252, 500 N.E.2d 353. However, other courts have required that "articulable facts must be introduced which prove that in the particular case there is a strong probability that evidence will be destroyed." See, e.g., *Dixon*, supra, 141 Ohio App.3d at 661, 752 N.E.2d 1005. We believe that the latter is the better approach. In this case, the officers were able to observe the occupants of the house through the glass door. Thus, they would have been able to observe any attempt at destroying evidence. No such attempt was observed. Although the state argues that there could have been someone else in the house who was destroying evidence, there is nothing to support that the police thought this to be the case. Furthermore, the trial court concluded that no rapid or threatening movements were made by the occupants of the house. We believe that the evidence supports that conclusion. Although the state argues that Curtis Hunter's movement provided exigent circumstances to enter the house, the testimony of Detectives Braun and Hall reveals that they observed this movement as they were already entering the residence. Therefore, it cannot form the basis of exigent circumstances justifying the entry itself. Accordingly, the trial court properly concluded that the officers violated the knock-and-announce rule in entering Hunter's residence.

■■ {¶ 20} The state also argues that the evidence in this case should be admitted pursuant to the "inevitable discovery" exception to the exclusionary rule. The state correctly recites the law relating to inevitable discovery. Under the inevitable-discovery doctrine, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means * * * then the deterrence rationale [of the exclusionary rule] has so little basis that the evidence should be received." *Nix v. Williams* (1984), 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377; *State v. Perkins* (1985), 18 Ohio St.3d 193, 195–196, 18 OBR 259, 480 N.E.2d 763. The rationale behind the inevitable-discovery doctrine is that the prosecution should not be placed in a worse position because of earlier police misconduct where the evidence in question would have inevitably been discovered absent the police misconduct. See *Nix*, supra; *Perkins*, supra. Thus, the state argues here that the evidence inevitably would have been discovered because they were exercising a valid warrant.

{¶ 21} We disagree with the state's argument. First, we note that this argument was not made before the trial court. Therefore, it cannot be said that the state proved by a preponderance of the evidence that the evidence inevitably would have been discovered, and this argument is waived. However, we do not believe that the state's argument is meritorious in any case. In *Taylor*, supra, 135 Ohio App.3d at 186, 733 N.E.2d 310, the Twelfth District addressed this issue:

{¶ 22} "[T]he inevitable-discovery doctrine does not apply where the evidence was gathered directly as a result of a constitutional violation and appellant cannot show that the evidence could have been gathered from an alternative legal method or procedure. * * * If this court were to apply the inevitable-discovery doctrine to this case, the knock-and-announce rule would cease to have any meaningful deterrent value." (Citations omitted.)

{¶ 23} We agree with the Twelfth District. The inevitable-discovery doctrine does not apply to allow the admission of evidence that would have been obtained by a valid warrant had the police not violated the knock-and-announce rule in executing the warrant. Such a result would render the knock-and-announce rule meaningless.

{¶ 24} We conclude that the trial court properly granted Hunter's motion to suppress.

{¶ 25} The sole assignment of error is overruled.

{¶ 26} The judgment of the trial court will be affirmed.

Judgment affirmed.

FAIN, P.J., and BROGAN, J., concur.