[Cite as *State v. Foster*, 2017-Ohio-2858.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104809**

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## VALINTON L. FOSTER

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-602936-A

**BEFORE:** Blackmon, J., McCormack, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** May 18, 2017

**ATTORNEYS FOR APPELLANT**

Michael C. O'Malley
Cuyahoga County Prosecutor

Mary M. Dyczek
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEE**

Steven L. Bradley
Marein and Bradley
526 Superior Avenue
222 Leader Building
Cleveland, Ohio 44114

PATRICIA ANN BLACKMON, J.:

{¶1} The state of Ohio appeals from the order of the trial court that suppressed evidence obtained during a warrantless search of Valinton Foster's ("Foster") vehicle. The state assigns the following error for our review:

> The trial court erred in granting [Foster's] motion to suppress physical evidence and statements because the police conducted an inventory search of a closed container in good faith and pursuant to a standardized and written policy.

{¶2} Having reviewed the record and pertinent law, we agree with the trial court's conclusion that the state's search of a closed can was conducted with an investigatory purpose, and the evidence obtained as a result of this search was properly suppressed.

{¶3} On January 22, 2016, Foster, who was driving a white BMW, was stopped by Cleveland Police Det. Donald Kopchak ("Det. Kopchak") for failing to signal a lane change, having no front license plate, and operating a vehicle with tinted windows. During the stop, Det. Kopchak determined that Foster's license was suspended. Prior to having the car towed to the impound lot, Det. Kopchak searched the car. He opened a can of Arizona Iced Tea, and observed residue, then used a chemically treated wipe to confirm the presence of narcotics.

**{¶4}** On February 23, 2016, Foster was indicted for possession of less than one gram of heroin, in violation of R.C. 2925.11, and possession of criminal tools, in violation of R.C. 2923.24(A), both with forfeiture specifications (cell phone and $3,412).

**{¶5}** Foster pled not guilty to the charges. On May 6, 2016, Foster moved to suppress the evidence against him, arguing that the search was conducted with an investigatory purpose, and not as an inventory of the contents of the car.

**{¶6}** The trial court held an evidentiary hearing on July 25, 2016. Det. Donald Kopchak testified that while on routine patrol on St. Clair Avenue in Collinwood, he observed Foster's vehicle make an unsignalled lane change. The tinting on the window obscured his view into the car, and the front plate was missing. Det. Kopchak stopped the vehicle, then determined that Foster's license was suspended. According to Det. Kopchak, police department policy required him to tow the vehicle, and the tow policy instructs officers to open any closed, unlocked containers found inside the vehicle and describe those containers.

**{¶7}** Det. Kopchak testified that while inventorying the contents of the backseat, he noticed a can of Arizona Iced Tea. He stated that he was not thinking of opening the can at that point, but he picked it up and "grabbed it just to move it." After Det. Kopchak picked it up, however, he determined that it felt heavier than normal. When he shook the can, he did not hear liquid inside. In light of his experience with such containers being used to conceal other items, he unscrewed the top. He observed a white powdery substance, then used a wipe to test it for the presence of narcotics, yielding a positive result.

**{¶8}** On cross-examination, Det. Kopchak acknowledged that he picked up small white pebbles from the floor and from crevices of Foster's BMW. He stated that he wanted to see what they were and was not looking for evidence of a drug offense.

**{¶9}** On August 3, 2016, the trial court granted the motion and suppressed all the physical evidence as well as Foster's statements at the time of the stop and search. The court duly noted the police department's written policy regarding the search of vehicles prior to towing. However, the court concluded from Det. Kopchak's testimony regarding the use of false bottom containers, and the unusual heaviness of the Arizona Iced Tea can, that his "purpose and intent" was to conduct an investigatory search. The court also held that the officer was required to obtain a warrant before opening the iced tea container.

**{¶10}** In its sole assigned error, the state argues that trial court erred in determining that the search was not a valid inventory search because the officer complied with the police department's inventory search policy that instructs officers to open closed and unlocked containers when a vehicle is to be towed.

**{¶11}** In *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, the Ohio Supreme Court set forth the standard of review of a ruling on a motion to suppress as follows:

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate

court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539.

*Id*. at ¶ 8.

**{¶12}** Inventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment. *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *State v. Mesa*, 87 Ohio St.3d 105, 108, 1999-Ohio-253, 717 N.E.2d 329. Under this exception, when a vehicle is impounded, police are permitted to follow a routine practice of administrative procedures for securing and inventorying the vehicle's contents. *Opperman*. Inventory searches are intended to: (1) protect an individual's property while it is in police custody; (2) protect police against claims of lost, stolen or vandalized property; and (3) protect police from dangerous instrumentalities. *Id*.

**{¶13}** Because inventory searches are administrative caretaking functions unrelated to criminal investigations, the policies underlying the Fourth Amendment warrant requirement, including the standard of probable cause, are not implicated. *Mesa* at 109, citing *Opperman*. Rather, the validity of an inventory search of a lawfully impounded vehicle is judged by the Fourth Amendment's standard of reasonableness; it must be conducted in good faith, and in accordance with reasonable standardized procedures or established routine. *Mesa*, citing *State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992), paragraph one of the syllabus; *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); and *Opperman*.

{¶14} An inventory search is reasonable when it is performed in good faith pursuant to standard police policy, and "when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle." *State v. Robinson,* 58 Ohio St.2d 478, 480, 391 N.E.2d 317 (1979). "If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers." *Hathman* at paragraph two of the syllabus.

{¶15} This court has recognized that policy and upheld inventory searches undertaken in good faith and in accordance with standardized procedures for vehicles being impounded. *See State v. Eason*, 8th Dist. Cuyahoga No. 103575, 2016-Ohio-5516 (concluding that there was "ample evidence" that inventory search of the vehicle, including its glove box and an unlocked cooler, was conducted in good faith and in accordance with the city of Cleveland Heights' standardized procedure regarding such searches, and officers were not required to get a warrant to search these items).

{¶16} However, "[a] search which is conducted with an investigatory intent, and which is not conducted in the manner of an inventory search, does not constitute an 'inventory search.'" *State v. Caponi*, 12 Ohio St.3d 302, 303, 466 N.E.2d 551 (1984). Likewise, "[i]nventory searches 'must not be a ruse for a general rummaging in order to discover incriminating evidence.'" *State v. Burton*, 8th Dist. Cuyahoga No. 64710, 1994 Ohio App. LEXIS 1590 (Apr. 14, 1994), quoting *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). *Accord State v. Woods*, 8th Dist. Cuyahoga No.

98054, 2012-Ohio-5509, 25 (affirming conclusion that police used towing inventory as pretext for a search of vehicle).

{¶17} In *State v. Stewart*, 8th Dist. Cuyahoga No. 94803, 2010-Ohio-6184, this court affirmed the suppression of evidence where the police officers, who decided to impound a vehicle due to improper registration, acknowledged that they searched the car because they believed that they would find additional contraband and took the speakers apart to search for drugs. This court concluded that "[b]ecause the officers searched Stewart's vehicle with the investigatory intent of searching for drugs, they did not conduct the search in good faith." *Id.* at ¶ 25.

{¶18} Similarly, in *State v. Seals*, 8th Dist. Cuyahoga No. 90561, 2008-Ohio-5117, this court concluded that the trial court erred in failing to suppress the evidence found after opening an aerosol can found in the trunk of a vehicle that was to be impounded. In that case, the record demonstrated that the officer found a rock of crack on the driver's seat, then found the aerosol can. The officer explained that because drug couriers frequently carry drugs in cans with false bottoms, he shook the can. He concluded that it felt like a bean bag was inside, leading him to suspect that the can was concealing drugs. In concluding that the officer conducted an investigatory search, this court stated:

> An inventory search "which is conducted with an investigatory intent, and which is not conducted in the manner of an inventory search, does not constitute an 'inventory search' and may not be used as a pretext to conduct a warrantless evidentiary search." It appears that is exactly what Officer Florjanic did. He used the inventory search as a pretext for searching for more evidence. If he suspected evidence was contained in the can, he should have obtained a search warrant to open the can. The vehicle was

not at risk of being driven away because it was to be towed to a secured police parking lot.

*Id.* at ¶ 28.

**{¶19}** Similarly, in this matter, the trial court stated as follows:

Detective Kopchak did testify that the Cleveland Police inventory search policy requires the search of all unlocked containers. And the policy was submitted into evidence, and it does state that officers are to inventory property found in unlocked, closed containers. It also requires a description of the container.

Despite the existence of this policy, Detective Kopchak's further testimony gave the Court pause regarding the purpose and intent behind the search inside the Arizona Iced Tea can.

He testified that in his experience and training, false-bottom containers such as the iced tea can, that he identified by its unusual heaviness, are commonly used to conceal drugs. Detective Kopchak also testified that false-bottom cans are used to conceal valuables.

However, the detective's actions in conducting this search led this Court to conclude that it was with an investigatory purpose. Not only did the officer open the can as soon as he retrieved it from the back, the officer also, in the body-camera footage, inspected minuscule white rocks found on the floor which could not possibly be considered part of the inventory of the vehicle.

* * *

The Court finds that when Detective Kopchak opened the false bottom, the Arizona tea can, he did so with an investigatory purpose. If he suspected evidence was contained in the can, he should have obtained a search warrant to open the can. The vehicle was not at risk of being driven away because it was about to be towed to a secured police parking lot. * * * The evidence obtained and the statements elicited as a result of this search must be suppressed as the fruits of a poisonous tree.

**{¶20}** These findings are supported by competent, credible evidence. Det. Kopchak testified to the police department's written tow inventory policy instructing officers to open and inventory the contents of closed and unlocked containers. However, he admitted that initially, he had no intention of opening the iced tea can and lifted it only to move it. He then determined that the can was unusually heavy, but when he shook it, he could not hear liquid inside. Det. Kopchak also stated that he is aware that similar items are used for concealing their true contents. He opened the container, then swabbed the inside for narcotics, a clear investigatory act. Additionally, the record demonstrates that the officer closely examined the small particles on the floor and in the crevices of the car and picked them up to "see what it was." However, car debris is beyond the scope of a general inventory search. The search for these items clearly manifested the officer's intention of finding evidence and not merely chronicling the contents of the car. Accordingly, we conclude that, despite the existence of a standardized written policy, the officer's actions went beyond the administrative caretaking functions for securing and inventorying the vehicle's contents, and demonstrated that the search was conducted as an investigative, warrantless evidentiary search.

**{¶21}** The state's assigned error is without merit.

**{¶22}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

TIM McCORMACK, P.J., and
LARRY A. JONES, SR., J., CONCUR