[Cite as *State v. Nixon*, 2023-Ohio-1160.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29606 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 00790 |
| | : | |
| RODERICK NIXON | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 7, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by RICKY L. MURRAY, Attorney for Appellee

CHRISTIE BEBO, Attorney for Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Appellant, Roderick Nixon, appeals from his conviction in the Montgomery County Court of Common Pleas after pleading no contest to possession of cocaine. In support of his appeal, Nixon claims that the trial court erred by failing to suppress drug evidence that was discovered inside his vehicle during a lawful traffic stop for speeding.

Nixon contends that the drug evidence should have been suppressed because the investigating officer discovered it while conducting an unlawful protective search of his vehicle and an unlawful inventory search. For the reasons outlined below, we will affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On April 13, 2022, a Montgomery County grand jury returned an indictment charging Nixon with one count of possession of cocaine (27 grams or greater, but less than 100 grams) in violation of R.C. 2925.11(A), a felony of the first degree, and one count of possession of a fentanyl-related compound in violation of R.C. 2925.11(A), a felony of the fifth degree. The charges arose after Officer Roger Hoff of the Trotwood Police Department discovered illegal narcotics inside Nixon's vehicle during a traffic stop for speeding. Additional narcotics were also discovered on Nixon's person while Nixon was being booked into jail.

{¶ 3} Following his indictment, Nixon filed a motion to suppress the drug evidence on grounds that the warrantless search of his vehicle had violated his Fourth Amendment rights. On July 29, 2022, the trial court held a hearing on Nixon's motion to suppress. Ofc. Hoff was the only witness to testify at the hearing. The following is a summary of Ofc. Hoff's testimony.

{¶ 4} Ofc. Hoff, a 23-year-police veteran, testified that he had been an officer with the Trotwood Police Department since February 2009. In addition to his role as a patrol officer at the time of the hearing, Ofc. Hoff had previously been a detective, RANGE Task

Force officer, evidence technician, and a firearms instructor for the Trotwood Police Department. Ofc. Hoff had participated in ongoing training during his tenure as a law enforcement officer.

{¶ 5} Concerning the instant case, Ofc. Hoff testified that on August 8, 2021, he was on duty operating a stationary traffic post on Wolf Creek Pike in Trotwood when he observed a silver Mercedes sedan approaching his location at a high rate of speed; his radar unit measured the vehicle's speed at 53 miles per hour in a 35 mile per hour zone. After the vehicle passed him, Hoff followed the vehicle onto Little Richmond Road and then activated the overhead lights on his police cruiser in order to conduct a traffic stop for speeding. Hoff testified that the vehicle continued driving very fast as he was trying to catch up to it, and that the vehicle's movements on the road were "a little erratic." Suppression Hearing Tr. p. 11. Based on past experiences in the same high crime area, Hoff believed that the driver might try to flee from him. Hoff testified, however, that the driver complied and stopped the vehicle in a center turn lane on Little Richmond Road near Guenther Road.

{¶ 6} Ofc. Hoff testified that, after the vehicle stopped, he noticed the driver making furtive movements inside the vehicle. Specifically, Hoff observed the driver reaching around the area of the driver's seat and lifting himself up off the driver's seat. Hoff testified that he did not know whether the driver was attempting to access or hide something. Based on his experience as a patrol officer, Hoff became concerned that the driver might be hiding a firearm.

{¶ 7} As Ofc. Hoff approached the vehicle, he observed that the validation sticker

on the vehicle's license plate had expired two years earlier in 2019. Hoff then made contact with the driver, identified himself, explained the reason for the traffic stop, and asked the driver for his identification. The driver, later identified as Nixon, provided Hoff with an Ohio identification card as opposed to a driver's license. Hoff did not recall whether he had specifically asked Nixon whether he had a valid driver's license, but Hoff assumed that Nixon did not have driving privileges since he only provided an identification card.

{¶ 8} Because Nixon only provided an identification card, and because of the furtive movements he had observed in the vehicle, Ofc. Hoff directed Nixon to exit the vehicle so that he could pat Nixon down and quickly check the driver's seat area of the vehicle for weapons. After patting Nixon down and finding no weapons, Hoff had Nixon sit in the backseat of his cruiser unhandcuffed while he searched Nixon's vehicle. Hoff explained that, at the time of the search, it was possible that he would have allowed Nixon to return to his vehicle, but that decision was dependent on the results of his records check, which he had yet to conduct. Hoff indicated that the protective search was a precautionary measure for officer safety in the event that he allowed Nixon to return to the vehicle or in case anyone else arrived at the scene to access the vehicle.

{¶ 9} Ofc. Hoff testified that he only searched the part of Nixon's vehicle that was in the immediate area of the driver. During the search, Hoff observed an opaque, blue eyeglass case between the driver's door and the driver's seat. As a firearms instructor, Hoff was aware of the existence of firearms that were very small that could have fit inside the case. As a result, Hoff opened the case to ensure a weapon was not inside. Upon

opening the case, Hoff observed plastic baggies containing a white, rock-like substance, which he suspected to be an illegal narcotic.

{¶ 10} After discovering the substance in the eyeglass case, Ofc. Hoff closed the case and put it back in the vehicle without removing anything. Hoff then went back to his cruiser to conduct a records check on Nixon and his vehicle. The records check revealed that Nixon was under five different driving suspensions and that the license plate on Nixon's vehicle was fictitious. Although Hoff testified that Nixon had provided a title showing his ownership of the vehicle, Hoff testified that the records check confirmed that the vehicle's license plates and registration belonged to a different vehicle, were not in Nixon's name, and had been expired for two years.

{¶ 11} Ofc. Hoff testified that, prior to the records check, he knew from observing the expired validation sticker on Nixon's license plate that he had authority to impound Nixon's vehicle pursuant to the Trotwood Police Department's tow policy. Hoff testified, however, that his practice was to not make a final decision about impounding a vehicle until he had a complete understanding of the driver's and vehicle's status. Hoff testified that once he learned that the license plate on Nixon's vehicle was fictitious and that Nixon had five driving suspensions—one of which was a noncompliance insurance suspension—he knew that impoundment was mandatory. Hoff explained that impoundment was mandatory because "unlicensed uninsured motor vehicles cannot be driving on the roadway by anybody." Tr. at 22.

{¶ 12} At the suppression hearing, Ofc. Hoff identified a copy of the Trotwood Police Department's tow policy, which was thereafter admitted into evidence as State's

Exhibit 1. Hoff testified that the tow policy had been in effect since 2004, and he identified three sections of the tow policy that provided him with authority to impound Nixon's vehicle. Those sections were as follows:

> (A)(4) When any vehicle displays illegal license plates or fails to display current lawfully required license plates, other than expired plates as addressed in (C)(4) of this order.

> (A)(9) When a person who is driving without a lawful operator's license or while the operator license has operated any vehicle that has been suspended or revoked [sic].

> (C)(4) If a vehicle is being driven on the streets with expired license plates, a traffic citation may be issued. The driver will be instructed to remove the vehicle from the street until properly registered. The vehicle may be towed if the registration has been expired for more than 30 days.

State's Exhibit 1; Tr. at 38-40.

{¶ 13} Section (E) of the tow policy also states that: "It is the policy of the Trotwood Police Department to inventory all vehicles, which we cause to be towed." State's Exhibit 1. Ofc. Hoff testified that the tow policy outlines an inventory procedure, which requires officers to conduct a complete and thorough search of impounded vehicles for valuables, contraband, and weapons. The tow policy indicates that a routine inventory includes searching "[t]he interior of the vehicle" as well as any "[c]losed, locked, sealed, or taped containers unless the contents of the container can be determined by the container's

exterior." *Id.*

{¶ 14} Ofc. Hoff testified that he advised Nixon that his vehicle was going to be towed and asked Nixon if there was anything illegal inside the vehicle. This conversation was video recorded by Hoff's cruiser camera, and the recording was admitted into evidence as State's Exhibit 2. In the recording, Nixon can be heard telling Hoff that there was nothing illegal inside his vehicle. Hoff explained to Nixon that if he did not find anything illegal inside the vehicle during the inventory search, Nixon would be cited for his traffic offense and released, but the vehicle would still have to be towed. Nixon then asked Hoff if his mom could come and pick up the vehicle. Hoff advised Nixon that no one could drive the vehicle since it was unregistered and had fictious plates. Hoff also testified that Nixon's vehicle could not be left where it was parked because it was in the center turn lane of a roadway and created a hazard.

{¶ 15} During the inventory search, Ofc. Hoff retrieved the opaque, blue eyeglass case from the vehicle and removed the plastic baggies containing the white, rock-like substance. Hoff testified that he determined the substance in the baggies was some type of illegal contraband, possibly crack cocaine. After making that determination, Hoff went back to his cruiser and immediately placed Nixon under arrest for possession of narcotics. Hoff then continued the inventory search; the only other contraband discovered in Nixon's vehicle was a pill bottle containing a small amount of narcotics. Hoff also testified that he conducted a search of Nixon's person incident to his arrest and found nothing illegal. However, when Nixon was booked into jail, he was searched again, and officers found three small baggies of narcotics in the coin pocket of his pants.

{¶ 16} After hearing the foregoing testimony and admitting the tow policy and cruiser camera video into evidence, the trial court took the suppression matter under advisement. On August 31, 2022, the trial court issued its findings of fact on the record and announced that it was overruling Nixon's motion to suppress. In so holding, the trial court found that Ofc. Hoff's initial protective search of Nixon's vehicle for weapons was lawful because Hoff had had reasonable suspicion that a weapon might be present in the vehicle due to Nixon's furtive movements. The trial court also found that even if the protective search of Nixon's vehicle had been inappropriate, the drug evidence would have been inevitably discovered during the subsequent inventory search. The trial court found that the inventory search was lawful because it was performed in good faith and in accordance with reasonable, standardized police procedures established by the Trotwood Police Department's tow policy.

{¶ 17} After the trial court overruled Nixon's motion to suppress, Nixon entered a plea agreement with the State and pled no contest to a reduced charge of possession of cocaine (20 grams or greater, but less than 27 grams), a felony of the second degree. In exchange for Nixon's no contest plea, the State dismissed the charge for possession of a fentanyl-related compound. The trial court accepted Nixon's no contest plea, found him guilty of possession of cocaine, and sentenced him to a mandatory minimum term of two years in prison to a maximum indefinite term of three years in prison.

{¶ 18} Nixon now appeals from his conviction, raising a single assignment of error for review.

**Assignment of Error**

{¶ **19**} Nixon raises two arguments that challenge the trial court's judgment overruling his motion to suppress the drug evidence discovered in his vehicle. Nixon's first argument is that the warrantless protective search of his vehicle violated his Fourth Amendment rights because, at the time of the search, Nixon did not have immediate access to the vehicle and because Ofc. Hoff had not yet decided whether he was going to permit Nixon to return to the vehicle. Nixon's second argument is that the warrantless inventory search conducted on his vehicle violated his Fourth Amendment rights because the Trotwood Police Department tow policy that authorized the inventory search did not set forth a standardized, routine towing procedure, but gave police officers unfettered discretion to tow vehicles. Nixon also claims that the Trotwood Police Department tow policy at issue was found to be unconstitutional by this court in *State v. Myrick*, 2d Dist. Montgomery No. 21287, 2006-Ohio-580. In addition, Nixon argues that because the inventory search was unlawful, the trial court erred by finding that the drug evidence would have been inevitably discovered during the inventory search.

*Standard of Review*

{¶ **20**} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).

"Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

*Fourth Amendment Principles*

{¶ 21} The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution protect persons from unreasonable searches and seizures. *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 13. "Under the Fourth Amendment, warrantless searches are per se unreasonable without prior approval by a judge or magistrate, subject to only a few specific exceptions." *Id.* at ¶ 15, citing *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) and *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "When a defendant moves to suppress evidence recovered during a warrantless search, the state has the burden of showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 18, citing *Athens v. Wolf*, 38 Ohio St.2d 237, 241, 313 N.E.2d 405 (1974). The two exceptions at issue in this case are limited protective searches of vehicles during a lawful traffic stop and inventory searches on impounded vehicles. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d

1201 (1983); *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *State v. Mesa*, 87 Ohio St.3d 105, 108, 717 N.E.2d 329 (1999).

{¶ 22} If evidence was obtained in violation of the Fourth Amendment, the general remedy is to exclude the evidence and all information arising as a result of it. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). However, " '[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means * * * then the deterrence rationale [of the exclusionary rule] has so little basis that the evidence should be received.' " *State v. Hunter*, 153 Ohio App.3d 628, 2003-Ohio-4204, 795 N.E.2d 139, ¶ 20 (2d Dist.), quoting *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) and *State v. Perkins*, 18 Ohio St.3d 193, 195-196, 480 N.E.2d 763 (1985). This is because, " 'the prosecution should not be placed in a worse position because of earlier police misconduct where the evidence in question would have inevitably been discovered absent the police misconduct.' " *Id.*

*The Protective Search*

{¶ 23} As previously discussed, a limited protective search of a vehicle during a lawful traffic stop is an exception to the warrant requirement. *Long* at 1049. Under this exception, "the police may search the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, if an officer possesses a reasonable belief that an individual is dangerous and may gain immediate control of weapons located in the vehicle upon returning to it." *State v. Walker*, 2d Dist.

Montgomery No. 24542, 2012-Ohio-847, citing *Long*.

{¶ 24} In this case, Nixon does not dispute that Ofc. Hoff lawfully stopped him for a traffic violation or that Hoff had a reasonable belief that a weapon might have been hidden in his vehicle. Rather, Nixon claims that the protective search of his vehicle was unlawful because Hoff did not have reason to believe that Nixon could gain immediate access to any weapon in the vehicle since Nixon was sitting in the back of Hoff's police cruiser during the search. Nixon also claims that the protective search was unlawful because Hoff had yet to determine whether he was going to allow Nixon to return to his vehicle.

{¶ 25} In support of his argument, Nixon cites *State v. Henderson*, 2d Dist. Montgomery No. 16016, 1997 WL 691459 (Nov. 7, 1997). In *Henderson*, this court determined that a warrantless, protective search of a vehicle during a traffic stop was unlawful because the driver, Henderson, posed no threat of gaining immediate control over any weapon in the vehicle since he was secured in the backseat of a police cruiser when the search took place. *Id.* at *4. We also found that the protective search was unlawful because, at the time of the search, the officers who had stopped Henderson had not yet determined whether they were going to permit Henderson to return to his vehicle. *Id.* In so holding, we stated the following:

> [T]he police officers did not determine as of yet whether they were going to allow Henderson to re-enter the car. According to Officer Clark's statement, Henderson told Officer Clark that he did not have a driver's license. When Officer Clark searched the car, he had not yet confirmed or

disconfirmed Henderson's admission that he did not have a driver[']s license through a computer check. Certainly, if Henderson did not have a license, the Officers would not have permitted him to re-enter the car. Furthermore, as Officer Clark testified, the officers had not yet discovered through a computer check whether Henderson had outstanding warrants for which he would be placed under arrest and, thus, not be allowed to re-enter the car. Because Henderson was secured in the back seat of the police cruiser and the officers had not yet determined whether they were going to permit him to return to the car, Officer Clark was not justified in searching its interior for their safety at that point.

Although Officer Clark was not justified in searching for safety reasons at that point, we do find that a police officer may search the interior of an automobile when the officer reasonably suspects that the individual has a weapon secreted in the automobile (as in the case of a furtive gesture) *and the officer has made the determination that he or she is going to allow the individual to return to the vehicle*. In that case, a search for the officer's safety is justified because the officer has confirmed that he or she is going to allow the individual to re-enter the vehicle wherein the individual could gain immediate control over a weapon. *Until a police officer has finally decided to return the individual to the car, however, safety reasons cannot be used to justify the search*.

(Emphasis added.) *Henderson* at *4.

{¶ 26} Nixon also cites *State v. Perkins*, 145 Ohio App.3d 583, 763 N.E.2d 715 (2d Dist.2001), wherein this court reaffirmed our holding in *Henderson* and stated:

At this time, we stand by our decision in *Henderson* and find that there is no justification in permitting warrantless searches where it has not been determined that a detainee may return to a vehicle. We do not agree with the state's suggestion that an exception should be carved out based upon the possibility that a suspected weapon in that detainee's vehicle poses a "danger to others."

*Id.* at 587.

{¶ 27} The State, however, points to *State v. Roberts*, 2d Dist. Montgomery No. 21221, 2006-Ohio-3042, an opinion which "does appear to blur somewhat the bright line rule of *Henderson* and *Perkins*." *State v. Smith*, 2d Dist. Montgomery No. 22279, 2007-Ohio-7156, ¶ 21. In *Roberts*, this court held that a warrantless, protective search of a vehicle during a traffic stop was lawful under circumstances where a passenger, who was suspected of recently engaging in a drug transaction, made furtive movements that led officers to believe that he was concealing a weapon. In so holding, we suggested that the protective search was warranted because the passenger "***may*** subsequently be permitted to return to the vehicle he was riding in." *Roberts* at ¶ 12.

{¶ 28} The State suggests that the "may" language used in *Roberts* implicitly deviates from the rule outlined in *Henderson* and *Perkins* because it insinuates that an officer need not make an absolute determination as to whether a detainee will be returned to the vehicle in order for a protective search of a vehicle to be lawful. However, this

court has observed that "*Roberts* was decided without reference to *Henderson* or *Perkins*, possibly because whether Roberts should return to the automobile was not a consideration in that case." *Smith* at ¶ 21.

{¶ 29} Upon review, we find that the facts of the instant case are very similar to those in *Henderson*. Like *Henderson*, at the time of the protective search, Nixon was in the backseat of Ofc. Hoff's police cruiser, and Hoff had yet to conduct his records check confirming whether Nixon had a valid license and registration. When the State asked Hoff if he would have allowed Nixon to return to his vehicle after the protective search, Hoff testified: "Possibly, depending on the results of my records checks – once I got a complete picture of what was going on with the driver – his driving status and the vehicle itself." Suppression Hearing Tr. p. 19. However, we need not determine whether the facts of this case satisfy the rule in *Henderson* and *Perkins* or what effect *Roberts* has on that rule; even if we found that the warrantless protective search of Nixon's vehicle was unlawful, the drug evidence would have been inevitably discovered during the subsequent inventory search of the vehicle, which, for the reasons discussed below, was lawfully executed.

*The Inventory Search*

{¶ 30} "Inventory searches are a well-defined exception to the Fourth Amendment warrant requirement." (Citations omitted.) *State v. Finfrock*, 2d Dist. Montgomery No. 28406, 2020-Ohio-1142, ¶ 22; *Opperman*, 428 U.S. 364 at 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000; *Mesa*, 87 Ohio St.3d at 108-109, 717 N.E.2d 329. " 'Under this

exception, when a vehicle is impounded, police are permitted to follow a routine practice of administrative procedures for securing and inventorying the vehicle's contents.' " *Id.*, quoting *State v. Foster*, 2017-Ohio-2858, 91 N.E.3d 98, ¶ 12 (8th Dist.) "An inventory search is not subject to the Fourth Amendment's warrant requirement or a probable-cause review, because it is a search that is made for administrative reasons and is unrelated to a criminal investigation." *Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, at ¶ 20, citing *Mesa* at 109. An inventory search is deemed to be constitutionally permissible in the absence of a warrant because it reasonably serves to protect the owner's property while it is in police custody, to protect police against claims concerning lost or stolen property, and to protect police and the public against potential hazards posed by the impounded property. *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990).

{¶ 31} " 'In order for police to perform a valid inventory search of an automobile, the vehicle must first be lawfully impounded.' " *State v. Jackson*, 2d Dist. Montgomery No. 25960, 2015-Ohio-3607, ¶ 14, quoting *State v. Clancy*, 2d Dist. Montgomery No. 18844, 2002 WL 628124, *3 (April 19, 2002). "An impoundment is lawful if it is conducted pursuant to standardized police procedures. * * * Standardized procedures for impoundment are required to ensure that a subsequent inventory search is not 'a ruse for general rummaging in order to discover incriminating evidence.' " *Clancy* at *3, quoting *Wells* at 4. Therefore, "a routine inventory search of a lawfully impounded automobile is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice, and when the evidence does not demonstrate that the

procedure involved is merely a pretext for an evidentiary search of the impounded automobile." *State v. Robinson*, 58 Ohio St.2d 478, 480, 391 N.E.2d 317 (1979), citing *Opperman* at 373. In other words, " '[t]o satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine.' " *Myrick*, 2d Dist. Montgomery No. 21287, 2006-Ohio-580, at ¶ 13, quoting *State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992).

**{¶ 32}** "A police officer's assertion that an inventory search was done pursuant to a police department policy is not sufficient, standing alone, to meet the State's burden of proving that a warrantless search was reasonable because it fits within the inventory search exception to the warrant requirement." *Id.*, citing *State v. Wilcoxson*, 2d Dist. Montgomery No. 15928, 1997 WL 452011, *4 (July 25, 1997). Rather, to establish a lawful inventory search based on standard police practice, " 'the evidence presented must demonstrate that the police department has a standardized, routine policy, demonstrate what that policy is, and show how the officer's conduct conformed to that standardized policy.' " *Id.*, quoting *Wilcoxson*. " '[A] wholly discretionary determination by police whether to impound a vehicle confined to the unfettered discretion of a police officer' [does] not constitute 'a standardized, routine policy or practice, that takes their actions outside the warrant requirements of the Fourth Amendment.' " *Id.* at ¶ 23, quoting *State v. Bozeman*, 2d Dist. Montgomery No. 19155, 2002 WL 1041847, *4 (May 24, 2002).

**{¶ 33}** In *Myrick*, this court found that a Trotwood Police officer's inventory search

of an impounded vehicle violated the Fourth Amendment under circumstances where the State "failed to demonstrate that the Trotwood Police maintained a standardized, routine tow policy based on a discernible set of criteria." *Id.* at ¶ 27. We reached this conclusion because no written, standardized tow policy was ever offered into evidence during the suppression hearing and because the officer who impounded and searched the vehicle failed to articulate a standardized policy. *Id.* at ¶ 23. Instead, the officer's testimony "clearly indicate[d] that even if the Trotwood Police possessed a written tow policy, the decision to tow a vehicle is not based on an objective, standardized set of criteria. Rather the decision to impound a vehicle, according to [the officer's] understanding of the policy, is based on the whim of the arresting officer." *Id.* Accordingly, we found that "Trotwood's impoundment 'policy' left the decision of whether to tow an arrested suspect's vehicle completely up to the arresting officer's discretion" and that "[t]his type of discretionary policy clearly violates the requirements of the Fourth Amendment. *Id.* at ¶ 27.

{¶ 34} Here, Nixon relies on *Myrick* and argues that the State failed to establish that the inventory search of his vehicle was conducted pursuant to a reasonable, standardized procedure. Specifically, Nixon claims that the Trotwood Police Department tow policy on which the inventory search was based provides officers with unfettered discretion as to when a vehicle may be impounded and searched. Nixon also argues that the Trotwood Police Department tow policy in question was the same tow policy that this court found to be unconstitutional in *Myrick*. We disagree.

{¶ 35} The present case is distinguishable from *Myrick* because in this case, Ofc.

Hoff identified a written copy of the standardized tow policy at the suppression hearing, and it was admitted into evidence as State's Exhibit 1. The tow policy provides, in relevant part, the following:

TOW - IMPOUNDMENT PROCEDURES

The purpose of this procedure is to establish guidelines for the towing or impoundment of vehicles for various purposes established under the ordinances of Trotwood or other statutory authority.

A. Members are authorized to impound or cause to be removed to the location designated, a vehicle found upon a street or highway under the following circumstances:

* * *

4. When any vehicle displays illegal license plates or fails to display current lawfully required license plates, other than expired plates as addressed in (C)(4) of this order.

* * *

9. When a person who is driving without a lawful operator's license or while the operator license has operated any vehicle that has been suspended or revoked.

* * *

C. Application

* * *

4. If a vehicle is being driven on the streets with expired license plates, a traffic citation may be issued. The driver will be instructed to remove the vehicle from the street until properly registered. The vehicle may be towed if the registration has been expired for more than 30 days.

* * *

E. Inventory

It is the policy of the Trotwood Police Department to inventory all vehicles, which we cause to be towed.

* * *

2.  During the course of a routine inventory of a vehicle, the following areas will be checked for items of value.

    a.  The interior of the vehicle.

    * * *

    e.  Closed, locked, sealed or taped containers unless the contents of the container can be determined by the container's exterior.

State's Exhibit 1.

{¶ 36} The admission of the foregoing tow policy shows that the Trotwood Police Department authorizes officers to impound vehicles based upon standardized practices. Although the policy leaves some discretion to the officer on the scene, it establishes a discernible set of criteria upon which to base the decision. *See State v. Favors*, 2d Dist. Montgomery No. 24921, 2012-Ohio-3596, ¶ 15. Accordingly, we do not find that the tow policy provides unfettered discretion to the officer.

{¶ 37} In addition, Ofc. Hoff pointed to the specific sections of the tow policy that provided him with authority to impound and search Nixon's vehicle, i.e., sections (A)(4), (A)(9), and (C)(4). Therefore, Hoff's testimony established that he acted in accordance with the standardized practices authorized by the tow policy and thus conducted the inventory search in good faith. Because the State presented evidence showing the existence of a standardized tow policy, the substance of the tow policy, and Ofc. Hoff's adherence to the tow policy, and because the tow policy does not provide officers with unfettered discretion as to when a vehicle may be impounded, we find that the inventory search of Nixon's vehicle did not violate the Fourth Amendment.

{¶ 38} We also find that this court did not specifically hold in *Myrick* that the Trotwood Police Department tow policy at issue was unconstitutional. Rather, we found

that the officer's testimony describing his understanding of what the tow policy was indicated that the tow policy was unconstitutional because the officer essentially testified that it provided officers with unfettered discretion to tow vehicles. Because the actual tow policy was never admitted into evidence in *Myrick*, Nixon's claim that *Myrick* establishes that the Trotwood Police Department tow policy is unconstitutional lacks merit.

{¶ 39} Because the inventory search of Nixon's vehicle was lawful, we find that the trial court did not err by failing to suppress the drug evidence discovered therein. Ofc. Hoff's testimony indicated that the initial protective search in no way affected his decision to impound Nixon's vehicle and that he would have impounded the vehicle and conducted the inventory search even if the protective search had not transpired. Tr. at 40-42. Indeed, Hoff indicated that his decision to impound Nixon's vehicle was solely related to the information that he had learned from the post-protective-search records check, i.e., that Nixon's vehicle was unlicensed and had fictitious plates, and that Nixon had a noncompliance/insurance suspension. Therefore, even if the initial protective search had been inappropriate, the drug evidence would have been inevitably discovered during Hoff's lawful inventory search of Nixon's vehicle.

{¶ 40} For the foregoing reasons, Nixon's sole assignment of error is overruled.

## Conclusion

{¶ 41} Having overruled Nixon's assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.